[668 NYS2d 215]

In the Matter of JOHN G. LOPRESTO (Admitted as JOHN GEORGE LOPRESTO), a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, January 20, 1998

## APPEARANCES OF COUNSEL

*Robert H. Straus,* Brooklyn *(Mark F. DeWan* of counsel), for petitioner.

*Gentile & Benjamin,* New York City *(Howard Benjamin* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

The respondent was served with a petition containing eight charges of professional misconduct against him. The Special Referee sustained all eight charges. The Grievance Committee now moves to confirm the Special Referee's report. The respondent has submitted an affirmation in response, admitting the charges and requesting that any final sanction imposed be deemed retroactive to the date of his interim suspension.

The charges are based on a common set of factual allegations.

On or about June 9, 1995, while acting in his capacity as attorney, the respondent was entrusted as a fiduciary with a check in the amount of $16,700 from Perry P. Panache, Esq., representing the down payment in a real estate transaction involving the respondent's client, Mr. Montiel. The respondent was to hold that amount in escrow until closing or until a proper disbursement was required.

The respondent deposited that check into his Interest on Lawyer Account (hereinafter IOLA) on or about June 9, 1995. On November 1, 1995, before his fiduciary obligation to hold the $16,700 in escrow had been discharged, the balance in the respondent's escrow account was depleted to $2,374.26. The respondent's fiduciary obligation to hold the $16,700 in his escrow account was discharged on or about February 6, 1996.

On or about August 25, 1995, while acting in his fiduciary capacity as an attorney, the respondent was entrusted as a fiduciary with a $13,125 check representing the down payment in a real estate transaction with his client, Giovanna Cugini. The respondent was required to hold that amount in escrow until closing or until a proper disbursement relating to the transaction was required. The respondent deposited that check into his escrow account on or about August 25, 1995. On November 1, 1995, before the respondent's fiduciary obligation to hold the $13,125 in escrow was discharged, the balance of that account was depleted to $2,374.26. The respondent's obligation to hold that sum in escrow was discharged on or about December 15, 1995.

On or about September 5, 1995, while acting in his fiduciary capacity, the respondent was entrusted with a $4,000 check from Joseph J. Sciallis, representing a partial down payment in a real estate transaction involving the respondent's client, Barbara Heppeler. The respondent was required to hold that amount in escrow until closing or until a proper disbursement relating to the transaction was required. On or about September 5, 1995, the respondent deposited that check into his attorney escrow account. On November 1, 1995, before the respondent's fiduciary obligation was discharged, the balance in the respondent's escrow account was depleted to $2,374.26. The respondent's obligation to hold the $4,000 in escrow was discharged on or about December 19, 1995.

On or about October 16, 1995, while acting in his capacity as attorney, the respondent was entrusted as fiduciary with a $20,000 check, representing the down payment in a real estate transaction involving the respondent's clients Nicholas and Mary Pandone. The respondent was required to hold that amount until closing or until a proper disbursement relating to the transaction was required. The respondent deposited the check into his escrow account on or about October 16, 1995. On November 1, 1995, before the respondent's fiduciary obligation was discharged, the balance in the respondent's escrow account was depleted to $2,374.26. The respondent's fiduciary obligation to hold the $20,000 in escrow was discharged on or about February 15, 1996.

Between September 9, 1995 and March 23, 1996, the respondent drew seven checks and made eight disbursements from his attorney escrow account which did not relate in any way to the real estate transactions involving the aforementioned clients. None of the checks or disbursements was drawn with the knowledge or consent of the clients. The respondent drew the following two checks on his escrow account to pay for personal expenses: a $60 check, drawn on or about September 9, 1995, payable to the order of Pennsylvania Harness Racing Commission, and a $55 check drawn on or about September 12, 1995, payable to the order of the Sacred Heart Athletic Association.

The respondent drew the following five checks upon his escrow account, made payable to himself or cash:

(1) Check number 1261 in the amount of $9,900 on or about November 7, 1995;

(2) Check number 1266 in the amount of $4,000 on or about December 1, 1995;

(3) Check number 1274 in the amount of $4,000 on or about December 14, 1995;

(4) Check number 1295 in the amount of $4,000 on or about January 19, 1996; and

(5) Check number 1300 in the amount of $2,000 on or about February 2, 1996.

The respondent authorized the following eight disbursements from his escrow account to several New Jersey gambling casinos:

(1) $2,000 payable to Adamar of New Jersey, Inc. (hereinafter Adamar), on or about November 4, 1995;

(2) a second disbursement of $2,000 payable to Adamar on or about November 4, 1995;

(3) $2,000 payable to BRC, Inc., on or about November 10, 1995;

(4) $6,000 payable to Adamar on or about December 29, 1995;

(5) $4,500 payable to T.C.A. on or about January 19, 1996;

(6) $2,000 payable to GNOC, Corp. on or about March 17, 1996;

(7) a second disbursement of $2,000 payable to GNOC, Corp. on or about March 17, 1996; and

(8) $2,000 payable to T.C.A. on or about March 23, 1996.

Between approximately November 7, 1995 and January 17, 1996, the respondent made the following six deposits of personal funds into his attorney escrow account:

(1) $16,830.58 on or about November 7, 1995;

(2) $1,000 on or about November 21, 1995;

(3) $10,350 on or about November 29, 1995;

(4) $5,000 on or about January 11, 1996;

(5) $45,688.59, in the form of a check from his retirement account at Long Island Savings Bank, on or about January 12, 1996; and

(6) $16,512.82, in the form of a check from David Lerner Associates, on or about January 17, 1996.

Charge One alleged that the respondent failed to properly safeguard and improperly converted to his own use funds relating to a real estate transaction involving his client, Mr. Montiel, which had been entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]).

Charge Two alleged that the respondent failed to properly safeguard and improperly converted to his own use funds relating to a real estate transaction involving his client, Gio-

vanna Cugini, which had been entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]).

Charge Three alleged that the respondent failed to properly safeguard and improperly converted to his own use funds relating to a real estate transaction involving his client, Barbara Heppeler, which had been entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]). ·

Charge Four alleged that the respondent failed to properly safeguard and improperly converted to his own use funds relating to a real estate transaction involving his clients, Nicholas and Mary Pandone, which had been entrusted to him as a fiduciary, in violation of Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]).

Charge Five alleged that the respondent improperly commingled funds entrusted to him as a fiduciary to be held in escrow with funds utilized for personal and business purposes, in violation of Code of Professional Responsibility DR 9-102 (A) (22 NYCRR 1200.46 [a]).

Charge Six alleged that the respondent improperly made out a check from his attorney escrow account to "cash", in violation of Code of Professional Responsibility DR 9-102 (E) (22 NYCRR 1200.46 [e]).

Charge Seven alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

Charge Eight alleged that the respondent engaged in conduct which adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Based on the respondent's admissions and the evidence adduced at the hearing, the Special Referee properly sustained all of the charges. The Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, we have considered the mitigating evidence offered by the respondent, including his participation in a Gamblers' Anonymous recovery program, his pro bono activities, the fact that all of his clients were timely paid at the time their monies were due, and the character letters submitted in his behalf. However, conversion constitutes serious professional miscon-

duct irrespective of the absence of actual harm to the client or the respondent's making full restitution. The respondent is guilty of serious professional misconduct which warrants his disbarment.

BRACKEN, J. P., ROSENBLATT, MILLER, RITTER and SULLIVAN, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, John G. LoPresto, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent' shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, John G. LoPresto is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.